21-1284. Counsel? Good morning. Good morning, your honors. May it please the court, my name is Allegra Glashauser representing Mr. Shipp. Your honors, Mr. Shipp, defense counsel, the prosecutor, and all of the public, everyone, were excluded as the trial started while the court spoke to jurors telling them about COVID safety and that the court's priorities were also in moving the trial along quickly. Was there a formal closure? Yes, your honor. No one was allowed in. When you say no one was allowed in, where do I look to see that there was a formal closure where the judge or anybody else said you cannot come? Well, the judge didn't say anything about it, which is part of the problem. There was no notice to defense counsel or to Mr. Shipp that anything at all was transpiring without them. Counsel, isn't it true that the jury hadn't been sworn yet and they had not gone through a board deal? The jury was sworn at the end. It was the pool for the trial and the jury was sworn at the end of the court's colloquy during this closed proceeding. So would the judge present the jury was sworn or does the record show it was after? I believe the judge was present. It doesn't show that the judge had left, although of course the record doesn't doesn't show people's movements generally. What's clear is that counsel was given no notice and no opportunity to object to this procedure and that was despite lengthy conversation about all the minutiae of jury selection in this case, which made sense because this was an unusual trial. After the after Judge Kovner returned, was there not an opportunity to say something, to object, and then ask for, and maybe this is part of your point, then ask for some way to rectify the purported error? Two responses, your honor. First, there was no opportunity to object because counsel didn't know what had happened. There is nothing in the record showing that on that first day of jury selection anyone knew what had transpired. The government actually asked the court, did you tell the jury the preliminary instructions? The court said no. But the court, I mean part, well I think the quote was did you tell the, give the jury a summary of the case, if I remember correctly, a preliminary summary of the case, which somewhat implicit is the idea that the government knew the judge had done something, isn't it? I don't think so, your honor. It's implicit that the government thought something might have happened, but the court said no. The court didn't say no, but I did give this instruction that none of us had discussed, even though we've been wordsmithing. What is the error then with respect to this issue that you would have us assign? What's the error? It's two errors, your honor. It's the violation of the right to the public trial, and it's also a violation of Mr. Smith's right, excuse me, Mr. Schiff's right to be present at all proceedings in his trial. But what's the specific error? So you've heard some questions about, you know, what happened, why is it that you think that Judge Kovner erred? Because as I understand it, but you can correct me if I'm wrong at any point, what she did was to tell these prospective jurors, so it's not voir dire, I think, here are the COVID protocols. So this is obviously a new frame because of the pandemic, but here are the COVID protocols, and here's what to very generally expect as a matter of those protocols. Is that wrong or is that right? She did that. She also told them that her priority was moving the trial along quickly, which was very problematic for the defense, which had flagged its concern that the jury would be in a rush to verdict because the jury took only half an hour to decide the guilt of your client. Correct, your honor, and that was in the context of rising COVID numbers, the New York City public schools being announced that they were shutting down again the day of deliberations. Would you have an objection or would there be an error that you would have as a sign if Judge Kovner or any judge at the district court level had played a video saying exactly what she said and saying, by the way, as Chief Judge Kaye of the New York Court of Appeals used to say, we're going to try to make sure that you don't spend too much time on trial. Is that an error? Your honor, if the parties had discussed a video that would be shown... No, forget the parties. If there had been a video shown as part of the Eastern District of New York procedure or not, and it was just her, a video of her without anything else presented to the jurors saying, here are the COVID protocols and we're going to try to make sure that the trial is not prolonged, would that be an error? If there was an administrative routine procedure, it would likely not be an error. That would be perhaps a different matter. Kaye, you added the word routine. Correct. If it's just an administrative procedure, is that an error? Is that something either under the Sixth Amendment or as a result of Rule 43 that the defendant would be entitled to attend? Your honor, under Pressley, I believe it would be. So Pressley made a very broad statement, many cases have, about the presumption of openness, but specifically for the voir dire procedure. This is part of the voir dire. This was not a USV Allen or Cohen or Greer. We seem to have exempted certain procedures from the category of voir dire. So USV Allen is a case only about the right to be present, not the right to a public trial. The public was welcome to come to that trial, as was defense counsel and the defendant. They declined to come. They were given the option and they said, no, we don't want to come. And that is not an error. They waived any right to be there. And still the court struggled with what happened. This is not like that because counsel had no opportunity to object or be at the proceedings. This court in Gupta considered a situation where the courtroom was closed during voir dire. The court noted nothing controversial happened. There was nothing that the parties pointed to at all that they might have objected to or said differently about the procedure. It was also, and yet this court said that is an error and we need to correct it because there is a presumption of openness. In Gupta, only two people were excluded from that portion of the proceedings from the voir dire and it was not defense counsel and the defendant. Are you suggesting that this was voir dire in this case? Yes, your honor. That's your principle claim? Yes, your honor. In the non-COVID context, these kinds of preliminary instructions and welcoming setting aside the COVID specifics happen in the courtroom at the beginning of voir dire and then proceed into the questioning. I'm not sure semantically whether we call it voir dire or preliminary instructions in advance of voir dire advances the ball too much. I agree, it depends what's said and what's happening, doesn't it? Yes, your honor, but I think what's important is in any other context, this would have happened in public with all the parties present and we would have proceeded to all the rest of the questioning that we associate with, I guess, the core of voir dire. The court has not cabined out different portions of voir dire and said the courtroom can be closed during some portions but not others. The Supreme Court has been extremely clear that there's this presumption. What about back to Judge Lilliat, an earlier question, Judge Lilliat, if this had been whether videotaped or in person by a jury administrator walking through the safety protocols, which might have been a choice the Eastern District would have made and maybe there was another video played at the beginning and I presume you wouldn't argue that standard preliminary instructions by the jury administrators, the jury department require the presence of defendant and defense counsel in the public or do you? I think that the Supreme Court has been clear that all of the proceedings should be open. I don't think that this circuit has taken up that particular issue because the earlier cases about administrative proceedings like hardship questioning being exempt from the right to public trial all occurred before Presley. So we have this very clear rule from the Supreme Court, an emphatic rule, that the courtroom should be open during voir dire. They in Weaver reaffirmed that this is a structural error and the Supreme Court is saying basically they mean it. The courtroom should be open and here there was really no reason to close the courtroom. That's the other thing that the Supreme Court talks about, this court talks about. The court should find if they need to close the courtroom why and then consider alternatives. Here there's never been any proper reason why it was closed. There was no reason to close it. Counsel, I'd like to turn to the merits of this trial just in the no time remaining. There was testimony provided by an investigator. What was the purpose of this testimony if not to imply that there was an alternative perpetrator? The purpose was to continue the defense argument that the police investigation was shoddy. That's the defense opened on. That's what the defense crossed the police officers about. They crossed the officers about the fact that their voucher paperwork said different officers collected the key evidence than the person who was testifying who said that she had collected it. They questioned the officers about how the address of where the key evidence was found was different on paperwork than it was in the testimony. And then they questioned that the police officers didn't speak to the individuals who were shown in the evidence photos presented by the government. That was something that they were perfectly, was perfectly reasonable argument for the dispense to make and did not open the door to rebuttal testimony. What is the relevance of all of that if not to call into question whether the defendant was the perpetrator? Well of course your honor, it was to say that the defendant was not guilty, certainly, but it was not to point the finger. I mean, not guilt, not the government hasn't proved beyond a reasonable doubt, but in fact not the perpetrator, right? I think it's both, your honor. It's that the government hasn't proven their case because they've put up a witness who said that she recovered the evidence when the evidentiary exhibit said somebody else did. They had a witness say the evidence, the key evidence, the ammunition, the gun, were recovered at a different place than the witness said it was individuals in them, including someone with a felony record and someone who was a correctional officer. And they said the government didn't look into alternative possibilities. They also said there were a lot of shootings and they put up evidence of this in the area so that other people could have been the perpetrator. They did not point to one person in particular. They did not do something that opened the door to exceedingly prejudicial messages, which the government then no matter how sloppy the investigation was, reached their verdict in 30 minutes. That's correct, your honor. And that fact, I would argue, although it doesn't matter what the evidence is as far as the public trial violation, I think that counsel's concern that the jury would rush coupled with the court's comment to the jury that the top priority was to along, coupled with the jury making an exceedingly quick verdict, it's just more support for the fact that defense counsel surely would have objected to what the court said to these jurors out of their presence if given any opportunity to do so. What would you have sought if you'd made that objection? In the context of this trial, everything else happened before the court said it. So counsel would have just said to the court, we object to you saying that portion of this opening colloquy, and it's likely that the judge would have acquiesced. They wordsmithed everything else that was said to the jury. They were extremely careful about discussing COVID protocols. I think this is a script because the two days, if you compare the transcript, it's exactly the same language. So this was at least wordsmithed by the judge. Correct, Your Honor, and not shared with the parties. And it is confusing why there's no explanation provided. The court specifically told the parties when defense counsel asked that the ceremonial courtroom where this occurred would only be for jurors to wait. And this was after defense counsel had inquired how would Mr. Shipp get to the ceremonial courtroom and working out logistics with the marshals in the event something would occur there. So defense counsel was under the impression because they were told that nothing would be happening in this ceremonial courtroom. Do we need to revisit, in your view, Peterson or Gibbons in order to rule in your favor, in your client's favor? To rule in my favor, no, Your Honor. In Gupta, the court declined to revisit those cases and just said that they should be used in an exceedingly rare situation. This isn't the situation. The court does not have to overrule those cases to find that Presley applies here. That under any extremely rare triviality exception, this wouldn't meet that, particularly because it was not just one or two members of the public like Presley and Gupta. It was everyone, and more importantly, it was Mr. Shipp. Yeah, but your complaint is not that the public was not permitted to participate or view that proceeding. Your complaint is that defense counsel and Mr. Shipp were not there. So look, I understand you're making both the Sixth Amendment case and you've got to do this and the Rule 43 argument, but the principal argument is that your client, as a matter of fact, Rule 43, was not permitted, along with the defense counsel, to attend that proceeding. Is that right? I suppose, Your Honor, in that they were the most important people, but I think that the public, that falls under the public trial violation. Okay, so there's a significant overlap between the Sixth Amendment public trial right and Rule 43. Correct, Your Honor. Go ahead. And on that point, because it's a little hard for me to get my head around exactly how to apply the triviality exception and how to differentiate it from a harmlessness analysis, which we're not doing. And it seems to me when you look at the cases where it's either deemed trivial or not trivial, one of the questions is, well, who was excluded? And so I understand your argument to be, in a sense, that as you consider whether the closure was trivial, one of the factors that might weigh into that analysis was who was excluded, was it the entire public, did it include the defendant, did it also include defense counsel and the government, all of those things. Am I right to think of those as sort of factors in a checklist when we weigh the question of triviality and how would you articulate what the test for triviality is? So yes, I think that those are factors that you should weigh. It's difficult to articulate the triviality exception for voir dire as it was created before Presley and the factors that Peterson lays out mostly do not apply to voir dire. I mean, factor one is sort of everything, isn't it? A fair trial. Sure. But some of the other factors about witnesses coming forward don't apply as much to voir dire as to the trial itself. And yet the Supreme Court has said voir dire has just as much presumption of openness as the trial itself. I think when we look to the cases where the court has applied that exception, another factor is whether it was inadvertent. So in Peterson itself, the courtroom was legitimately closed for some period of time, but then the closure continued and the judge hadn't realized that the courtroom doors hadn't been unlocked. And that's a factor that the court looks to. We don't have that here. And then I would say look to Gupta, where Gupta says it doesn't matter, even if nothing controversial happens, it doesn't matter that in Gupta it was also a brief period of time. What matters is that the courtroom was closed and that's... Would you have been satisfied, counsel, if the district court put on the record a less restrictive or discussed less restrictive methods and rejected them? She could have been on a loudspeaker, for instance, so that all counsel could have heard what she was saying, but that was not considered. Definitely, Your Honor. I think there are a number of less restrictive options the court should have considered on its own and also that the parties would have suggested. There was an audio-visual feed set up during the rest of the trial for the public. Mr. Shipp and defense counsel could have been brought into the ceremonial courtroom, and so they could have participated in person while the audio-visual feed was provided to the public. There are a number of different things the court should have considered and didn't. And again, there just was no legitimate reason to close the courtroom at all. And the government never has proffered one. The court didn't make any findings, and that compounds the error. Thank you very much. Thank you. We reserve some time for rebuttal. We'll hear from counsel for the government. Thank you, Your Honor. May it please the court. My name is Philip Pilmar. I'm an assistant United States attorney in the Eastern District of New York. I represented the government at the trial below. What was the rush to have this trial take place when we were all still suffering from COVID-phobia? Well, the defendant would not waive speedy trial time, Your Honor. So the court did everything in its power to make sure this trial could occur because the defendant did not want to waive speedy trial rights, which was, of course, within his right. So Judge Kovner did everything in her power to make sure that this trial could happen given the COVID protocols. And that wasn't just Judge Kovner. The record discusses that it was the courthouse as a whole that made a decision about how to conduct this trial, including consultation with HVAC experts on the airflow and an interpretation that the ceremonial courtroom should be used as a holding area for the jurors and that the jurors should be brought 10 at a time across the hall for the actual voir dire. Many of the potential jurors expressed discomfort about serving. Were all of them excused? Your Honor, I wouldn't characterize it as many. I think it was about eight or nine of the 60 that characterized some discomfort, and they were all excused. And that's because we had several specific COVID questions during the voir dire, a two-day voir dire for a relatively short trial, Your Honor, because we went into painstaking detail on many topics. And the jurors were asked, would they feel compelled to rush to a verdict? Would they blame the government or the defense for having to sit on a trial during the... Maybe they were put at ease by the fact that one of the things they heard from the judge was that top priority was moving the trial quickly. Is that possible? I would say, Your Honor, I think the jurors were likely put at ease when they entered the courthouse for the first time and they had a temperature check. Everyone was wearing masks. They had to fill out a health questionnaire. Only two jurors were allowed in an elevator at the time. And no one could argue that that was part of voir dire. I'd also like to turn to the fact that my adversary said there was no opportunity to object. And we strongly disagree with that, Your Honors. Explain. Yes, of course. On day one, when I asked, and this is at Government Appendix 17, did you give a preliminary summary of the case? And the court replied that she had not. Defense counsel did not say, wait, I didn't know you had a court reporter. Hi, can you read back what just occurred? Was there a court reporter during this meeting with the jurors? Yes, everything was on the record, Your Honor. Judge Copper did not do anything on either day without a court reporter present. I noticed the cover of the transcript of the proceeding indicated mechanical recording of some kind. I don't know if in the Eastern District, is there a physical court? Was there a physical court reporter? There was a physical court reporter for all including the voir dire and the pre-voir dire in the ceremonial courtroom. So once I said that and defense counsel said nothing, I didn't say that because I had some kind of ex parte conversation with the court or the clerk that I knew this was occurring. It was because we all knew this was occurring and no one cared and no one objected. Do you think defense counsel do? Do you think defense counsel do? Based on what? Your Honor, I honestly cannot recall how we knew, but the record reflects that by my asking that question, it shows that we all did know because once I asked that question, if defense counsel had heard for the first time that the judge had spoken to the jurors in some manner, she would have surely... But it's at least ambiguous, isn't it? Both your question and then the meaning to be derived from the judge's answer. I mean, I agree the inference you're arguing is available, but so is the other inference. Maybe on day one, Your Honor, though I don't concede that, but on day two, the record is actually much clearer. Right, so I think that matters for the right to be present because you have to make an objection before the end of voir dire or its waive, but isn't the law for public trial right the requirement of a contemporaneous objection? So if they're not on notice at the time it's happening, it's not waived, isn't that right? Well, I think what it shows is that what happened on day two informs the knowledge that... Understood, but day two is after day one, so just on the question of... If I think that the colloquy with you is ambiguous and if I agree with you that something more was going on on day two, but with respect to day one, they haven't waived, right? If I conclude that the record's ambiguous and they didn't know. But there surely could have been remedies that could have taken place. For example, we could have thrown out the panel on day one, for example, if the defense counsel actually had an objection, which she did not. So there were remedies available before the voir dire completed and the actual... But is there a law to support the notion that for the Sixth Amendment right that you have to not just know about it at the time it occurs, but if you learn about it before the end of voir dire, and I agree there is that precedent for the right to be present, but is there something comparable for the Sixth Amendment right? Or is your argument it wasn't ambiguous from the beginning? Our argument is that it was not ambiguous from the beginning, Your Honor. I also want to turn to Judge Pooler's question about, well, wasn't there a rush because the jury reached its verdict in only 30 minutes? Your Honor, I would submit that that was because the evidence in this case was overwhelming. I know you would suggest that, but to an outsider, it may look like there was a rush to judgment. Only because without... Once you look at the full record, Your Honor, it's obvious to us why the jury reached a quick verdict because the defendant was on video shooting the victim, standing over him with a gun where his face can clearly be seen. The victim says, pump, pump, I don't want to die. And not only did we introduce multiple pieces of evidence that the defendant was pumped, in fact, defense counsel conceded in both her opening and closing statements that the defendant was pumped. So the defendant is on video standing over the victim as the victim is saying, pump, I don't want to die, and counsel's conceding that her client is pumped. So that's why... And the defendant admitted to being at the shooting where the video shows him at on Facebook messages shortly after and that he's fled New York. So can you help me with another issue? Of course, Your Honor. I think Judge Nathan touched on, which is this issue of plain error versus structural error, which has had me scratching my head for years because I don't understand it. Here you, I think the government asks us to apply a plain error standard of review for somewhat for the reasons that you just suggested in answer to Nathan's questions. But we've also described these issues relating particularly with the Sixth Amendment to the Sixth Amendment right to a public trial as issues that we should review if there is error for structural error. Can you help me? Of course, Your Honor. I think this court's decision in United States v. Gomez, which is in 2013, is directly on point to Your Honor's question. It says that a defendant claiming deprivation of a right to a public trial doesn't need to demonstrate prejudice. So you don't have to have... And usually that's a plain error requirement. Right. But whether an error can be found harmless is simply a different question from whether it can be subjected to plain error review. And in that case, the district court had removed the family members from the voir dire with the acquiescence of defense counsel, and the court held there that it was not plain error for the judge to close the courtroom in that way with the acquiescence of defense counsel. But here there was no acquiescence, of course. There was no acquiescence of defense counsel in this case. Well, I disagree, Your Honor, because we all knew about it, and defense counsel did not object. So you're saying silence is acceptance of the state of affairs? Well, it's not just silence, Your Honor. It's observation and then asking questions, showing that she's on notice, she being defense counsel, of the judge speaking to the panel. And she never asked for what the judge said. She never objected. So therefore... But even that cannot cure structural error. We disagree, Your Honor. We believe that once you don't raise an objection to something that you know is occurring, that therefore plain error review applies. So if we disagree with you on that and we're focused on the Sixth Amendment right, we think it's a closure, no Waller analysis. So structural error, unless we conclude it's trivial, let's just assume that's where we are in the analysis. Tell me why, tell me how you understand that test. Like what words would you use to describe that test and what factors go into it to do that analysis? Triviality is clearly a fact-specific determination. There's a footnote in Morales which says that triviality is gauged by the degree to which a particular closure undermines the values the Sixth Amendment was designed to protect and mentions a couple of factors such as duration of closure or outcome on proceeding. So here the duration was quite short. It's a few pages of a transcript. If you read it out loud, it's about eight to ten minutes. Usually two pages, two minutes a page, I think is about accurate. But here, if you assume there's a closure, it is far more trivial than what happened in Gibbons. So in Gibbons, the defendant's mother, who was the only courtroom spectator, so I disagree that only one spectator was removed, it was the only spectator at the time, was removed from the mourning of Wardeer and that was found to be trivial. In Peterson, the courtroom, although inadvertently... So you agree it's a factor who's excluded. We should account for whether it's everyone or a few people or one person, whether it's the defense and the defendant and the government or whether it's just the defendant and the like. That would be part of that analysis as you describe it there. Well, but in those cases, I don't think it's fair to say just because one spectator was removed that only that it's the whole courtroom is still closed in those cases, just because only one person decided to show up. Right, but so it's relevant to the triviality analysis how many people are excluded, who's excluded. Fair to say. I think it's fair to say that there's a lot of factors. Is that one of them? I guess... Should I take your acquiescence? It's a right to a public trial, right? So I'm trying to understand or decipher exactly what it is you're saying. If there is a closure and the public is excluded from the courtroom, then it doesn't matter who within the public, it could be media people, it could be people who are just interested. Of course. That is the factor. Right, but in Peterson, the courtroom was locked, so no one could enter. For the defendant's testimony, which I think we can all agree is a far more substantive part of a trial than the brief administrative logistical remarks that Judge Kovner gave here and the court held in Peterson that that was trivial. You describe it as brief and administrative logistical and I understand that contention. I suppose another way to think about it is you can't separate this from the context of COVID and the first trial in the Eastern District. COVID is front of mind. The question in that courthouse and every courthouse in the country was can courts provide fair and public jury trials? Yes, Your Honor. And that's the question the judge discussed with the jury with no members of the public present, nor the defendant or defense or the government, right? I still believe that it is brief and administrative because these are the same type of remarks. I think Your Honor actually said this and I was going to raise that same point, that a jury clerk could give these exact same remarks. And the key is that voir dire does not attach to the second jurors enter the courthouse. When they go through security, when they watch the video that all jurors watch. When a judge talks to the jury, it imparts something more than an administrative officer. This is the judge speaking and the jury is told over the course of this trial that when the judge speaks, it's important. Yes, Your Honor. But in Greer, this court held that meetings with jurors in chambers on personal hardships, hardship questionings, over-objection, that was over-objection case, is not part of voir dire. So if meetings with jurors in chambers, which will result in their excusal from the panel, is not voir dire, then surely administrative logistical remarks, even about COVID cleaning protocols, should not be part of it. Your point, I take it, is that there must be a line that we can demarcate between voir dire and what you describe and what we've described as these administrative pre-screening procedures. So if we don't have that line, then we wouldn't be able to make sense of Greer, of Allen, where we've described this line. Yes, Your Honor. But Judge Nathan, I know, asked a question or said something about how in many proceedings, the voir dire starts off with a judge talking about more or less logistical matters. Is that considered a part of the voir dire? Is that where voir dire starts in your view? I think the difference in this case, Your Honor, is because we were all trying our best to make this trial work during the pandemic, and that the courthouse and the epidemiologist determined that the jury pool should sit in the ceremonial courtroom and be brought over to the courtroom in groups of 10. So I don't believe there's a case on that, Your Honor, because this is a unique and rare circumstance because it's the first pre-vaccine... I don't know why you say that. No, I understand the pandemic uniqueness, pandemic related uniqueness of this, but I just listed three cases, Allen, Greer, and Cohen, that broadly speaking are the same category of case where there is what appears to be something that is not voir dire, that is administrative, that does not necessarily in the debate in one of those cases is about whether the colloquy between the judge and the jurors constituted a form of voir dire and was more than merely administrative. But we've created this line, and I think your argument is that that line that we have defined maps on to the COVID protocols since the beginning of the pandemic. Yes, I agree, Your Honor. I apologize if I did not understand your question, but I think Greer is outcome determinative of this case because... On the Rule 43 side. Well, Greer is about Rule 43, but I think it actually is about both in this circumstance because the question is, when did voir dire occur? Because I don't know of any case that says that the Sixth Amendment and Rule 43 begins before voir dire. So if Greer is saying that those hardship questionings which removes jurors from the panel is not part of voir dire, then surely this is not part of voir dire, and thus the Sixth Amendment did not attach. Counsel, why did you think it was necessary to ask the judge if she had described the case to the potential jurors when you came into the courtroom? Because admittedly, Your Honor, we can see this, we did not know exactly what the judge had said, but no one objected and no one cared. But you didn't know what went on in that room either. Yes, Your Honor, but defense counsel could have asked further questions like she did on day two of voir dire, or asked the judge what she said in entirety, or asked the court reporter to read back the transcript. And the defense counsel did not, which means it should be reviewed under plain error, and thus it cannot be clear or obvious error, if any error at all, given this court's decision in Greer. I'll ask you just one final question. For sure. Unless my colleagues have got any further questions. Do you have a sense of whether other district court judges in the Eastern District of New York have done this? So I want to get a sense of whether this is an issue likely to recur in subsequent cases. I honestly don't know what other judges did at this time. I believe this may have been the first and only trial pre-vaccines, because I think things got shut down again afterwards. And now we're back to a more normal-ish protocol than we were at that time. But I am not aware, Your Honor, of if this had been done other times, because I just don't think there were other She knows differently, but I do believe this was the only trial at that time in the Eastern District. I know the Southern District had a few trials, but I believe aside from COVID, it's not generally the practice in the Eastern District, is it, for the judge to make any kind of welcoming and preliminary remarks prior to the veneer being sent to the courtroom for Vaudeer? I'm not aware of that, Your Honor, but I'm also not aware of any other trials where the jury had been separated in this way, which was based on- It happens, I think, with large trials where you have questionnaires being filled out, and sometimes judges do do preliminary remarks in the larger space. And I would think the good practice would be to confer with counsel so they know that's going to happen, do that on the record, and if they want to be present, I would think they'd be permitted to be present. If the public wanted to be present, I would think the public would be permitted to be present. So that's the only comparable circumstance I can think of outside the COVID context. I know you want to analogize it to kind of playing a preliminary administrative video or some kind, and maybe it's somewhere in between. All right. That's what we'd like to say on the second circle. We've kept you well past your time. Thank you. I rest on our papers for other issues. Thank you, Your Honor. From counsel for Ship. Thank you, Your Honors. To start where you just ended, I think this is exceedingly unlikely to ever reoccur. I agree with the government that this was the first and only trial that occurred in this COVID context in the Eastern District. It is unique, and that is one reason why the error is uniquely important, because as Judge Nathan has been pointing out, the judge coming in and talking about COVID in this context could easily have put them at ease, and the jurors could have had reactions to those comments that defense counsel and Mr. Ship would have liked to see and take into account when going through the rest. When does that end? I mean, a really good lawyer will want to be with the jurors at breakfast. I think that's state court practice. But federal court practice, if you had the opportunity. At some point, voir dire begins, and at some point before that, I think we said, but you can again correct me if I'm wrong, in Allen, and we've certainly suggested that in other cases, that something can happen before voir dire, where there is a interaction between the presiding district court judge and the prospective jurors that is not voir dire. I believe that the only exceptions that this court has carved out for the right to public trial, which happened before the Supreme Court spoke in Presley, was about hardship questions, scheduling logistical conflicts. In Cohen, this court actually said that prescreening of jurors is included in the defendant's right to be present, and Cohen distinguished that from... That's prescreening where there is a back and forth, as I understand it, between the judge and the jurors, where the judge is actually affirmatively eliciting information from the jurors. Here, that did not happen. It might as well have been a video because the jurors were not allowed to say anything, were not questioned, were not asked anything. They were told, here are the protocols. I don't want to prolong... I'm not going to prolong the trial. So why is that not just a purely administrative matter that is in response to a worldwide pandemic? It's not the same as a video, Your Honor. Having the judge speak to the jury is important. It's something that this court takes extremely seriously. We presume that the jury follows the court's instructions. But that happened in Allen. That happened in Greer. That happened in Cohen. And not in every case did we say that there was even a Rule 43 violation. So, well, those cases aren't about what happened here. Here, the public was excluded, and it was entirely excluded because the public was excluded in person for the whole trial, so they only had access when the audio-visual feed was set up, which it wasn't. The public was excluded. Mr. Ship was excluded. Defense counsel was excluded. That is not similar to any of the cases that Your Honor listed. Allen specifically is one that the court had difficulty with because the judge did do something different than what was anticipated. But the parties had been made explicitly aware that this was going to happen. They were invited to come, and they said, no, thank you. And so that is a different situation than here, when the record is devoid of any information that defense counsel knew. And this court should not take the government's comment in oral argument that we all knew, but he can't recall how they knew, as somehow part of the record. What this court looks at is the record, and the record has no indication that defense counsel knew. On the contrary, defense counsel was told the ceremonial courtroom was only for waiting. This case is a structural error case, to answer Your Honor's question about structural versus plain error. And it's structural error because the Supreme Court in Presley and earlier cases, and this court in Gupta, have said public trial violations are structural errors. And that's because it is exceedingly difficult or impossible to figure out any effect it had on the trial. It's just the sort of right that we have to reverse for because there's no way to do this sort of harmless error analysis. Thank you very much. Thank you. Very helpful. We'll reserve decision.